UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COUNTY OF BERKS,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 15-4862 |
| | : | |
| **OTIS ELEVATOR COMPANY,** | : | |
| Defendant. | : | |

**M E M O R A N D U M**

**Stengel, J.**                                                                                      **September 23, 2015**

The County of Berks seeks injunctive relief against the Otis Elevator Company. Otis has maintained the elevators in two Berks County office buildings for many years. That arrangement ended in July 2015.  Otis owns a device necessary to diagnose problems with several of Berks County's elevators; Berks County needs this device. Specifically, the plaintiff wants Otis Elevator Company to return: (1) a functioning Otis Maintenance Tool ("OMT") capable of servicing Otis Elevonic 401 Controllers and (2) and other tools or materials necessary to service the elevators in the County's Services Center and Courthouse.  A hearing on the plaintiff's motion was held on September 22, 2015 at the federal courthouse in Reading.  For the reasons stated below, I will grant plaintiff's motion for injunctive relief subject to a protective confidentiality agreement.

I.  **BACKGROUND**

   a. **The Parties**

The County of Berks is a county of the third class and a political subdivision of the Commonwealth of Pennsylvania.  It is headquartered at the Berks County Services Center, located in Reading, Pennsylvania.  The defendant is a corporation organized and existing under the laws of the State of New Jersey.  The defendant's principal place of business is in Connecticut.[1]

   b. **The Parties Entered into a Service Agreement for Fifteen Elevators**

In 2004, the parties entered into an agreement for the preventative maintenance and service of fifteen elevators located in the County's Services Center (the "Services Center") and Courthouse.  See Pl.'s Ex. 3.  The initial term of the agreement was 5 years.  Id.  In 2009, and then again in 2014, the parties extended the term of the agreement.  See Pl.'s Ex. 4; Pl.'s Ex. 5.  Thus, the agreement was ultimately extended until July 7, 2015.  Pl.'s Ex. 5.

When drafting the agreement, the parties anticipated what would occur upon its termination.  Specifically, Paragraph 8 of the General Conditions Section states that "[i]f the contract is cancelled . . . [defendant] shall immediately deliver to the County all reports, records, writing diagrams, portable electronic diagnostic tools, access codes, and other materials and documentation related to and required to facilitate services required by the contract."  Pl.'s Ex. 3 at 14.  The agreement further states, in Paragraph 25 of the

---

[1] The plaintiff initially filed a Petition for Special Relief in the Court of Common Pleas of Berks County, Pennsylvania on August 26, 2015.  On August 27, 2015, the defendant removed the action to this Court.  I have jurisdiction pursuant to 28 U.S.C. § 1332.

same section, that "any termination of the contract pursuant to the TERMINATION clause, shall not relieve or release either party hereto from any rights, liabilities or obligations which it has accrued under law or under the terms of the contract prior to the date of such termination." Id. at 26.

### c. The Parties' Agreement Terminated

Although the parties failed to renew their agreement prior to its July 7, 2015 termination date, evidence was presented at the hearing that demonstrated that the parties continued to operate under the agreement until the middle of July 2015. On July 23, 2015, by letter, the plaintiff notified the defendant of its intent to declare the defendant in default under the agreement.[2] See Pl.'s Ex. 10. In that letter, the plaintiff provided the defendant with fifteen days to cure the deficiencies identified in an attachment. Id. Because these deficiencies were not cured within the fifteen days, on August 13, 2015, the Commissioners of Berks County officially terminated the agreement by means of a resolution. See Pl.'s Ex. 12. By letter dated August 17, 2015, the plaintiff informed the defendant that it had terminated their agreement. Id. In that same letter, the plaintiff asserted its rights under Paragraph 8 and asked the defendant to produce the OMTs necessary to service its elevators. See id. To date, however, the defendant has not provided the plaintiff with the OMTs or other equipment necessary to service its elevators.

---

[2] The County sought to declare the defendant in default for failing to address certain maintenance issues with its elevators. While not relevant to the instant dispute, it is clear that the business relationship between the parties has greatly deteriorated.

3

### d. The County Requires an OMT to Service its Elevators

The plaintiff has experienced numerous problems with its elevators in both the Services Center and its Courthouse. The Services Center is a sixteen-story building that contains offices for various public organizations including the District Attorneys' Office, the probation office, children's services, and judicial chambers. On August 3, 2015, the plaintiff was forced to take one of the Services Center's elevators out of service because it repeatedly stopped before reaching the desired floor. Additionally, the elevator failed to open, momentarily trapping passengers on two separate occasions. On August 5, 2015, the County was forced to take one of the Courthouse's elevators out of service. The Courthouse is an eighteen-story building that houses many public organizations including the Sheriff's department, the Court of Common Pleas, the Public Defender's Office, and the County's back up 911 dispatch call center. Despite having a contract with another elevator maintenance service provider, these two elevators cannot be repaired without the OMTs and related materials.

At the hearing, Carl Geffken, the Chief Operating Officer for the County, testified about the impact of the malfunctioning elevators upon the plaintiff and its operations. Mr. Geffken noted that approximately 1,800 employees use both buildings on a daily basis. Further, he noted that that there are thousands of visitors who seek access daily to the public programs housed in the buildings. Currently, there is only one functioning elevator that can service floors 11-18 of the Courthouse. See Pl.'s Ex. 1. Thus, the malfunctioning elevators have caused a delay in services as well as a heavier impact on the remaining functioning elevators. Additionally, the County has had instances when it

has had to contact the Reading Fire Department to rescue individuals trapped in the elevators.

Mr. Geffken also testified that on Friday September 18, 2015 two other elevators were placed out of service due to safety concerns. This meant that the County did not have a functioning elevator that could service floors 11 through 18 in the Courthouse. While these two elevators were repaired by the afternoon of Monday September 21, 2015, in the interim, the County was forced to relocate departments so that they would be accessible to the public and individuals who were unable to use the stairs.

The plaintiff also provided testimony to establish that an OMT is necessary to service the elevators at issue. While the plaintiff's witness, who had over 18 years of experience in the elevator industry, agreed that some repairs could be completed without an OMT, to access the elevator's software, a technician must have an OMT. Although the plaintiff is in the process of modernizing its elevators and removing the defendant's equipment that requires an OMT, until the last one of these units is removed from service, the plaintiff cannot adequately inspect, repair and service all of its elevators.

## II.  DISCUSSION

A party seeking special relief in the form of a preliminary injunction must demonstrate that: (1) "an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages;" (2) a "greater injury would result from refusing an injunction than from granting it," while issuing the injunction "will not substantially harm other interested parties in the proceedings;" (3) the "injunction will properly restore the parties to their status as it existed immediately prior

to the alleged wrongful conduct;" (4) the complained of activity is actionable, "that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits;" (5) the injunction " is reasonably suited to abate the offending activity;" and (6) the "injunction will not adversely affect the public interest." Kessler v. Broder, 851 A.2d 944, 947 (Pa. Super Ct. 2004) (quoting Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc., 573 Pa. 637, 642, 828 A.2d 995, 998 (2003)); see also Duquesne Light Co. v. Longue Vue Club, , 63 A.3d 270, 281 (Pa. Super. Ct. 2013) appeal denied, 621 Pa. 696, 77 A.3d 1260 (2013) (affirming the trial court's grant of a preliminary injunction).

### a. The Injunction is Necessary to Prevent Immediate and Irreparable Harm that Cannot be Adequately Compensated by Damages

The plaintiff presented evidence at the hearing that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Namely, without the OMT and related materials, the County will be unable to fully test its elevators to ensure their safety. Without the desired equipment, the County will be unable to perform the required state inspections for nearly 16 months. Further, the evidence demonstrates that there are thousands of individuals who use the elevators on a daily basis and who could potentially be harmed by a malfunctioning elevator. Fortunately, this has not occurred to date.

While the defendant has argued that this dispute can be remedied by monetary damages, I am not convinced. First, the County is a public entity using public funds to operate. Although the County could hire the defendant to service its elevators, the

County has chosen not to renew its contract with the defendant. The County has chosen to engage another elevator maintenance firm to service its elevators. The defendant's proposed solution would require the County to incur expenses above and beyond that contract. Further, it would force the County into a business relationship that it chose to terminate. An amicable business relationship no longer exists between the two parties. There is a significant concern for the safety of the public, a concern which overrides the defendant's argument that monetary damages would be sufficient. The possibility of a lawsuit for contract damages at some future time does nothing to address this legitimate and immediate concern for the safety of County employees and citizens using the two buildings.

### b. Greater Injury Will Result from Refusing the Injunction than from Granting it and the Injunction Will Not Substantially Harm the Defendant

A failure to grant the requested injunction could present a clear and great threat to the public's safety. As noted above, thousands of individuals use these elevators on a daily basis. Without the OMTs and related materials, the County cannot ensure that these individuals will be safe.

While I acknowledge the defendant's claims that the OMT and related materials are proprietary in nature, this concern can be addressed through a protective confidentiality agreement or order. The defendant presented evidence that the equipment was at one time subject to a patent. See Def.'s Ex. 1. However, that patent is almost thirty years old. Id. No evidence was presented that the patent has ever been renewed.

Further, while the defendant offered as evidence an "Operator's Maintenance Tool Agreement" that purported to require its employees to maintain the OMT as a trade secret, the defendant offered no evidence that any employee ever signed this agreement. See Def.'s Ex. 2. In fact, this "Agreement" offered into evidence by Otis was blank and was of little value.  Instead, the uncontradicted testimony from two of plaintiff's witnesses demonstrated that the materials the plaintiff now seeks were left unattended in two elevator rooms on the County's property over a period of years.  The testimony also revealed that not only did County employees have access to the equipment, but so did employees from one of the defendant's competitors, a consulting firm hired to complete a modernization review of the County's elevators.  While I acknowledge that the defendant has an interest in ensuring that the equipment does not fall into the hands of its competitor, this concern can be adequately addressed through a confidentiality agreement or order that will allow the County to service its elevators but at the same time protect the defendant's interest in its equipment.

### c. The Injunction will Restore the Parties to Their Status Prior to the Termination of the Agreement

The injunction will ensure that the plaintiff will be able to service its elevators, two of which have been out of service since the beginning of August 2015.  Further, it will allow the plaintiff to adequately diagnose future problems with the elevators that service two large buildings that house essential public programs in downtown Reading.  Thus, the plaintiff has established this required element.

### d. The Plaintiff's Right to the OMT and Related Materials is Clear under the Parties' Agreement

The plaintiff's right to receive the OMTs and related materials is clear under the plain language of the agreement. The parties clearly anticipated what would occur upon termination of the agreement, as Paragraph 8 of the General Conditions Section states that "[i]f the contract is cancelled. . . [defendant] shall immediately deliver to the County all reports, records, writing diagrams, portable electronic diagnostic tools, access codes, and other materials and documentation related to and required to facilitate services required by the contract." Pl.'s Ex. 3 at 14. The agreement further states, in Paragraph 25 of the same section, that "any termination of the contract pursuant to the TERMINATION clause, shall not relieve or release either party hereto from any rights, liabilities or obligations which it has accrued under law or under the terms of the contract prior to the date of such termination." Id. at 26.

The OMT is a "portable electronic diagnostic too," that is "required to facilitate services required by the contract," namely the repair of the plaintiff's elevators. The testimony presented at the hearing demonstrated that while some repairs could be completed without these materials, there were other essential repairs and tests that could not be completed without them. This plain language in the agreement is more than mere boilerplate, and is evidence that the parties intended that such materials would be provided to the plaintiff upon termination of the contract. The plaintiff has established this element necessary for an injunction.

      **e. The Injunction is Reasonably Suited to Abate the Offending Activity**

The plaintiff has established that the injunction will allow it to properly service and diagnose problems with its elevators that provide access to two essential County buildings. Therefore, the plaintiff has established this necessary element for an injunction.

      **f. The Injunction Will Not Adversely Affect the Public's Interest, but Rather Will Promote It**

The evidence presented at the hearing was clear that there is a substantial threat to the public posed by the current condition of the elevators in the County's Courthouse and Service's Center. While not only is there a threat that one or more individuals could be seriously injured, the lack of functioning elevators has also impacted the public's access to numerous essential County services. Thus, granting an injunction will not adversely affect the public's interest, but rather will promote it by ensuring that the County's elevators in these two buildings function safely and efficiently. As such, the plaintiff has established this necessary element for an injunction.

## III. CONCLUSION

For the foregoing reasons, I will grant the plaintiff's motion for injunctive relief, subject however, to a confidentiality agreement between the parties.

An appropriate order follows.